Good morning. This next case is 4-15-0522. Christopher Jenner, et al., Appellants v. The Department of Commerce & Economic Opportunity, Appellee. Appearing for the Appellant is Attorney Jacob Hubert. Is that correct? Yes, sir. All right. And for the Appellee is Attorney Carolyn Shapiro. Mr. Hubert, you may proceed. May it please the Court, my name is Jacob Hubert and I represent the Appellants, a group of Illinois taxpayers. Illinois courts have long held that taxpayers have standing to seek an injunction against the illegal use of public funds. This case requires nothing more than a straightforward application of this well-established principle. The plaintiffs are challenging a regulation promulgated by the defendant, the Department of Commerce & Economic Opportunity. They allege that this regulation is illegal because it directly contradicts the statute and has resulted in the State issuing millions of dollars more in tax credits to certain businesses than it legally could. Plaintiffs have standing to challenge this regulation for two reasons. First, plaintiffs have standing as taxpayers to challenge the use of public resources to administer an unlawful regulation. Second, plaintiffs have standing as taxpayers to challenge the issuance of tax credits that are not authorized by law. Illinois courts have long recognized that taxpayers have standing to seek an injunction against the misuse of public funds because taxpayers are the equitable owners of public funds and will be liable to replenish any shortfall in public funds that results from illegal activity. Counsel, do you have a case that stands for the proposition that taxpayers have standing to sue for the failure to collect taxes as opposed to taxpayers standing to sue based on the misuse of public funds or taxes already collected? There's no case in which a taxpayer plaintiff has had standing to make the government go collect taxes from somebody. The case law does not say that. Are you saying that there is no case one way or the other on that? Or there are cases out there but that do not allow for standing for taxpayers to sue for the collection of taxes? The Illinois Supreme Court has held in the Lyons v. Ryan case that the taxpayers do not have standing to sue on behalf of the state to get revenue from private parties on behalf of the state. There hasn't been a case that I'm aware of where taxpayers have sought an injunction to force a public official to go collect tax dollars from somebody. And that's not the theory of taxpayer standing that underlies this case. Taxpayer standing exists to allow taxpayers to stop a public official from affirmatively doing something illegal. And that's what plaintiffs are seeking to do here. The Illinois Supreme Court has made clear that the misuse of public funds includes the use of public resources to administer an unlawful enactment. And the use of those resources gives taxpayers standing to challenge that use of public resources. Isn't the fundamental claim here that the state should be collecting certain income taxes that it isn't because of this regulation that was, in your judgment, improper? It's true that the application of this regulation results in the state collecting less tax revenue because the General Assembly has said that businesses should be taxed at a certain rate. It has said that tax credits under the EDGE program may be issued up to a certain amount. And the plaintiffs are alleging that, in fact, the Department is issuing tax credits that exceed that amount so that funds that should be in the Treasury are not ending up in the Treasury. Well, if, for instance, the courts were to agree with your fundamental claim, the result would be that the state would be collecting additional income taxes that it is not now collecting because of this regulation. That's true. That would be a result. Is there any other result? Well, I mean, that's what this case is about, isn't it? Well, that's right. This regulation would be struck down because it contradicts a state law. And then the Department would have to promulgate, presumably, a new regulation that would comport with the law. And whether the tax credits that it issues under that on balance would be more or less would remain to be seen, but certainly the kinds of tax credits they've been issuing that exceed the legal limit would no longer be permissible. And the Supreme Court has made clear that even administering an unlawful enactment in itself, the use of public resources internally to administer something illegal, constitutes an injury to taxpayers. In the Krebs v. Thompson case from 1944, for example, the Illinois Supreme Court recognized that taxpayers had standing to challenge a statute for the licensing of professional engineers that they alleged was unconstitutionally vague. And there was no allegation that the state was paying out money to anybody illegally, and the taxpayer wasn't personally affected by the statute. But because the statute was unconstitutional, the taxpayer had a right to enjoin the use of public funds to administer that statute. And it's the same here. The plaintiffs are challenging a regulation which they allege is illegal because it directly contradicts a statute. And so taxpayers have a right not to have their tax dollars used to administer an unlawful regulation. The department has argued that this case is different from other cases that have recognized taxpayer standing because it involves a challenge to a regulation rather than a challenge to a statute. But that difference isn't relevant. The key to taxpayer standing is whether a public official or a public body is using public resources to do something illegal. And that's exactly what the plaintiffs have alleged here. The case law does not say or imply that taxpayers only have standing to challenge an illegal statute. It so happens that taxpayer cases might commonly challenge a statute because if there's an unconstitutional statute on the books, you know that when the government administers that statute, it's going to be doing something illegal, so there's something there to enjoin. But that's also true where you have an invalid regulation. And it would also be true if there was a policy in place that a government body or official were consistently following. And it would also be true if there was simply a pattern of illegal activity where, say, a corrupt government official was consistently paying out cash to people without authorization. The Department has also suggested that recognizing taxpayer standing in this case would lead to excessive lawsuits where taxpayers would challenge any decision by any government official that they don't like, which could flood the courts and potentially grind government to a halt. But there's no basis for such a concern for several reasons. One reason is because the principles that taxpayers are asking the courts to apply here aren't new. They've been part of Illinois law for over a century. And, in fact, the courts haven't been flooded with taxpayer lawsuits seeking to enjoin lots of different things. There's a sort of natural limit on that given that it's costly to bring lawsuits, and presumably taxpayers would only have a strong incentive to do so where there's a lot at stake. The Attorney General's Office cites the Chambliss case, page 11 of its brief, with a proposition that only a taxing body can bring a suit to collect taxes. Unless I missed it, you don't respond to that argument or that case in your reply brief, and you didn't discuss it in your initial brief. This case does not ask the government to affirmatively collect taxes. It's not an injunction to tell the Department of Revenue or any government official to go collect a certain amount of taxes from somebody. All it's seeking to do is enjoin the Department of Commerce and Economic Opportunity from issuing tax credit awards. It's not seeking to have the government go collect taxes from anybody. So that case isn't on point because that's not what the taxpayers here are seeking to do. Why doesn't it stand for the proposition that a taxpayer lacks standing to sue for the collection of unpaid taxes, which is what we're talking about here? It's how I began my question. If we agree with this case, that would mean the state would be collecting taxes from these employers that it's not now collecting. The taxpayers cannot force the government to go collect taxes from any given person or any group of people, and that's not what the plaintiffs here are seeking to do. If the plaintiffs were to prevail here and the Department of Revenue declined to collect taxes from a given person for whatever reason, we couldn't go to court and ask the court to direct the government to collect taxes from somebody. Plaintiffs don't have standing to do that. What they have standing to do is to stop the government from administering an illegal enactment, spending resources to do that, and from taking the affirmative step of issuing the tax credit award and entering into an agreement for the tax credit award. An ultimate consequence of that will be that more taxes will be collected. But that's not the remedy that the taxpayers here are seeking. The only remedy is to stop entering these illegal agreements and stop issuing awards pursuant to those agreements. What's the nature of the illegality concerning this regulation in your argument? Well, the underlying statute involved here, the EDGE Tax Credit Act, says in effect that tax credits issued under the statute must be limited to a certain amount. When a business gets a tax credit award, the amount of that tax credit they receive must be limited to new employees that they hire after entering into the agreement to work on a particular project. The regulation that plaintiffs are challenging that was promulgated afterward says that the tax credits can actually be limited to not only the amount of income taxes withheld from new employees hired after the company enters into the agreement, but also the amount withheld from retained employees, people the business already employed, who are working on the project in question. And that's in direct conflict with the statute. The General Assembly said only up to this point, and then the Department turned around and said, well, not only up to that point, but also this additional amount from people the business was already employing. Whether that's a good policy decision or not, it contradicts the law. And if the state is going to allow tax credits up to that amount, it has to be authorized by the General Assembly. The Department can't decide on its own that it's going to essentially expand this program and make more available. And in fact, this regulation results in the Department issuing tax credits to businesses that otherwise would not qualify for them at all, because they hire no new employees after entering into the agreement, and the tax credits they get are based entirely on taxes withheld from retained employees. So the Department here is clearly violating the law. And when a public body is violating the law, the case law is clear, the taxpayers have a right to stop them from using their money to do that. The Department has also raised the prospect, I should add, the Department suggests that this could lead to people challenging particular actions of government officials they don't like. But it's important to recognize that taxpayer standing only allows taxpayers to enjoin future bad actions by government officials. You can't go back and challenge discrete decisions by government officials after the fact because you think they were illegal. You can only sue to stop government officials from doing something illegal in the future. Let me ask this. I don't know whether this is part of the record or even could be part of the record, but in this case before this suit was brought for declaratory and injunctive relief, was there discussion had with the Department and perhaps the Attorney General's Office on the claims you folks are making and some responses to why they weren't going to change the regulation or respond before you brought this litigation? There's nothing to that effect in the record, Your Honor. And to my recollection, we did not have a discussion like that. Did that trouble us? In other words, given the nature of government, if there's a problem here and this regulation exceeds statutory authority, shouldn't the first step be to say, hey, Department of Commerce and Economic Opportunity, we're interested taxpayers. You screwed up. You should fix this. And if you don't, we're going to be suing you about it because you shouldn't be doing this. And, you know, give them an opportunity. Maybe short of this litigation and questions of standing which have arisen which don't really address the merits, but it's possible that someone would say, you know, that's a good point. They're just talking about newly retained people as opposed to folks who were previously employed here. What about that? We believe that would be futile because this regulation has been on the books since, I believe, 1999. No one noticed until now? Fifteen years' worth? Sixteen years? Well, no one sought to challenge it in all this time. That's true. But the conflict with the statute is clear. There can be no question that the department intended to expand the availability of tax credits beyond what the statute says. Well, arguably the fact that it's been on the books since 1999 would lend further support to my concern because it's entirely possible, indeed likely, that the current faceless, nameless bureaucrats in the Department of Commerce and Economic Opportunity may not have even been aware of this. They just inherited a situation that's been going on for over a decade and might be even more receptive to second-guessing their predecessors had someone said, by the way, this is wrong and you ought to fix it before filing suit. Well, Your Honor, this lawsuit has been pending for a long time, so they've been aware of it all this time and they have not taken any steps to repeal the regulation, which suggests that if they won't do it in response to a lawsuit, presumably they wouldn't have done it in response to a letter. There's a second basis for standing in this case, and that is that the actual issuance of the tax credit award is itself an expenditure of government funds because it's functionally equivalent to an expenditure of government funds. It makes no difference from the taxpayer's perspective whether the government gives an illegal subsidy in the form of a check, a cash payout, or in the form of a tax credit. Either way, the effect on the state treasury is the same, and the taxpayer's liability to replenish the treasury for any shortfall is the same. And it would make no sense to say that taxpayers would have standing if the government were to collect taxes from these businesses and then issue them a check, but they don't have standing if the government just takes the shortcut of giving them a tax credit. Either way, the consequence for taxpayers is exactly the same. And the excess amount of these tax credits does constitute public funds because, again, the General Assembly has said that these funds belong in the treasury, and the reason they're not getting there is because of the illegal activity of the department. The department has also argued that, in response to both bases of standing, that the plaintiffs don't have standing here because only the state is the real party in interest that could pursue this kind of claim. But there's no basis for that argument, no valid basis. The state relies on, the department relies on the Lyons v. Ryan case, and, again, that case is inapplicable because it was a taxpayer derivative action where taxpayers were suing a private party, multiple private parties, on behalf of the state to take back money for the state and put that money in the state treasury. And under existing precedent at that time, taxpayers lacked standing to do that. Only the Attorney General is allowed to sue private parties to take back money for the state. But that isn't this case. This case isn't a taxpayer derivative action. Plaintiffs are not seeking to take back money from businesses that have received illegal tax credits. They're only trying to stop future illegal activity, which is precisely what the case law says they're entitled to do. In fact, in its most recent case on addressing taxpayer standing, the Illinois Supreme Court made this perfectly clear in Schicitti v. UBS Financial Services. It said that, and that was another case, a taxpayer derivative case, where a plaintiff sued private parties on behalf of the state to get money for the state. And the court said, you can't do that. But Lyons has no effect on taxpayers' ability to bring true taxpayer lawsuits on behalf of their own interests to stop the government from doing something illegal. And that's, again, precisely what the plaintiffs are asking the court to do here. So this case does not require the court, it does not ask the court to break any new ground. The case simply asks the court to apply this well-established principle that taxpayers have a right to stop public bodies and public officials from using their taxpayer dollars to do something illegal. So for that reason, we respectfully ask the court to reverse the trial court's dismissal and remand the case for consideration on its merits. Thank you, Mr. Hoop. Ms. Shapiro. May it please the court, counsel, I'm Carolyn Shapiro, Solicitor General of Illinois, representing the defendant, Akali. I think it's useful here to start with some first principles about standing. Standing in Illinois requires an injury to a legally cognizable interest. As the courts have said repeatedly, that injury must be distinct and palpable, fairly traceable to the defendant's actions, and redressable through the requested relief. The reason for this is to ensure that the disputes before the court are truly adversarial and are not mere abstract disagreements. Those same principles apply to taxpayer standing. It's always been a narrow doctrine, and it does not allow lawsuits over generalized disagreements. The basic underpinnings and principles of traditional standing doctrine apply. So traditionally, the Illinois courts have recognized taxpayer standing only where the taxpayer has an equitable ownership in the public funds at issue and is liable for replenishing them. Again, this is the same basic idea as traditional standing, some kind of legally cognizable interest, the equitable ownership in the public funds at issue. In addition, courts have allowed challenges to the operation of an unconstitutional or illegal statute. End quote. Leaving all that aside for the moment, counsel, I guess my first concern is, aren't the plaintiffs correct that this regulation is clearly inconsistent with the statute? I mean, if we reach that issue, doesn't that appear to be the case? No. Why not? Well, the statute talks extensively about the importance of retaining employees as well as creating new jobs. For example, in Section 5-15, the statute states, the department shall make credit awards under this act to foster job creation and retention in Illinois. In considering an application under Section 5-25B3, the department must determine if not for the credit, the project would not occur in Illinois, and that can include a showing that receiving the credit is essential to the applicant's decision to create or retain new jobs in the state. Well, that's all well and good, except the act specifically provides that these credits will be given for employees hired after the taxpayer's entered into the tax credit agreement. If you look at the definition of retained employees in the challenge regulations, you can see that it refers only to employees who are now spending at least two-thirds of their time in the project, the new project, that has been approved for the tax credit. So these are employees whose current positions are largely attributable to the capital improvements and other investments that, if not for the credit, would not occur in Illinois. So they're still former employees, but what? I'm not sure I understand. Well, I suppose the question of what is... They were working there for... They were working there, they were doing something different, unrelated to the project that they are now spending at least two-thirds of their time working on. So the position they are in is essentially a new position from that perspective. Is counsel correct that this is a regulation that goes back to the late 90s? I believe it first became effective in 2000, but shortly after the act was... Who was governor in 2000? I believe that was Governor Blagojevich. I thought that was Ryan in 2000. Governor Ryan, I'm sorry. Well, our former ex-felon governor, let's assume that we had a regulation promulgated by his department that said, defined how this would work and said, we're going to talk about a tax credit for the compensation of new employees and retained employees arising from such employees' employment in a project where there are 817 retained employees as of the date of the agreement. It just so happens, in the best spirit of crony capitalism, that there's this big contributor, buddy of George Ryan, who's got this big plant in Kane County that has 817 retained employees. They're the only ones who benefit from all this, and the worst aspects of crony capitalism and corruption. This really stakes this new agreement, and it looks for all concerned that this was designed to and succeeded in benefiting only this one employer who is George Ryan's buddy and making big contributions to him. If I understand your position, the corruption shown by all of that, since the attorney general, I guess, is the only one who could challenge it, and I'm not even sure of that, but nobody, not these plaintiffs, no interested citizen could say, wait a minute, this situation stinks. This is unlawful. This is not what the statute says. In addition, I want to go behind all of this to bring all of this out, and I want to challenge this regulation. Your position is, sorry, you don't have standing to do that, and this certainly clearly corrupt circumstance has to go unabated until such time as, I guess, the state itself chooses to abrogate it? Our position is that the regulation itself cannot be challenged by a taxpayer on the grounds that it's inconsistent with the statute, yes. The corruption you're describing is actually not necessarily the result of a regulation. Corruption can come about through a variety of different mechanisms. But it speaks through the regulation. It occurs through the regulation. The regulation identifies 817 retained employees. It can't be challenged. The regulation, if taxpayers could challenge the regulation because they believe that it has some kind of corrupt intent behind it, then there would be no reason why taxpayers couldn't themselves come to court and challenge any other government action that they believe has some kind of corrupt intent behind it. In fact, regulations, in some sense, are the worst example. Well, actually, it wasn't the corrupt intent that I was getting to. It's just to make it an even harder case to say you don't have standing. Your position is they don't have standing to bring this, and essentially your position is the same. Even if it were stinking of corruption, you still wouldn't have standing. That's correct. Is that a good policy? Is it one that, from our point of view, is it one that we should embrace when the Illinois Supreme Court hasn't exactly spoken with clarity on it? And maybe you're right, but why shouldn't we say, you know, if this is going to be the policy of the state of Illinois, Supreme Court of Illinois, say so explicitly, and maybe in this case. There are several reasons why this court should not go that far. First, it is not realistic. It is not possible to cabin the kind of challenges you're describing to regulations. In fact, plaintiffs don't attempt to. They say any kind of pattern or practice of behavior, any kind of policy, we should be able to challenge as unlawful. So, for example, on plaintiff's theory, they should be able to challenge a Department of Revenue policy that certain types of tax disputes will be settled for less than what is arguably the full amount owed, whether based on principled public policy points or based on corruption. Second, there are other mechanisms in place to look at problems of corruption of the sort you're describing. Taxpayer lawsuits are not the only way. What would be the other ways? Well, for example, with respect to a regulation, the regulations have to be reviewed by JCCAR, as these regulations work. So there's an opportunity at that point for members of the legislature to step in. Throughout, the public always has the opportunity to speak to its elected representatives and state officials and say we don't think that this regulation is legal or we don't think this regulation is a good idea. It's not, in fact, part of the record, but the Department of Commerce and Economic Opportunity has announced in November that it is no longer approving tax credits based on retained employees. I can't say that that's a result of this lawsuit, but it suggests that there are other levers available to taxpayers or available to concerned citizens besides simply going to court to sue. Well, to be blunt, it seems to me, at least mine, I think maybe the consciousness of corruption and crony capitalism has been particularly raised over the last eight years as we see half a billion dollars squandered on Solyndra projects, more government beneficence to people who, again, kind of like my example with George Ryan, seem to be well connected to the federal government who is providing the beneficence to these folks. And, of course, that's just the biggest example. And perhaps what I'm suggesting, raise the question directly to you, is given the corruption demonstrated over the last several years by government actions or inactions, why shouldn't this whole concept of questions in the taxpayer suits be revisited and cast again to the Supreme Court to say, do you still want to adhere to this policy given what we have now seen over the last 15 years? I don't think that this court can open taxpayer standing to the extent that the plaintiffs are asking for. I suppose the Supreme Court itself could revisit it. But this court is, of course, bound by the precedents that are there, and they – Well, the precedents that are there are – how do I put this? You've argued it well, but less than directly on point, four square, with exactly what we have here. So I suppose my question is, given that, how about saying, you know, maybe the Solicitor General is right in this case that there's no taxpayer standing, but like grandma's chicken soup, it wouldn't hurt to tell us again if that's the situation you still adhere to since some of these cases go back 50 years? Well, so let me see if I can lay out what I think the options that courts have when considering taxpayer standing. And this, I think, addresses your question. A court could say that taxpayers have standing to sue any time they think a government action is improper or illegal. And even if it only involves a de minimis amount of public funds, because we're talking about the administration of a statute or a program, the taxpayer should be allowed to sue on that basis at any point. That is a floodgate. That would what? That would open the floodgates. Well, if it were based on a claim of illegality, as opposed to – the Department of Revenue works out a settlement with some taxpayer for less than the department originally said you owe, that would be troubling. But here, we're not talking about a settlement of a lawsuit in the routine business of enforcement. We're talking about a regulation that on its face they're saying, hey, this is not consistent with the law. What if we just had standing – if you're citing a regulation that is illegal, because they can't have regulations in violation of law, we'll let you litigate that. What floodgates would that open? Well, it still goes to the question of whether or not we're going to allow challenges to the interpretation and application of law, as opposed to whether or not the law can exist in the first place. We are talking about drawing lines that are, I think, somewhat blurry, and that there may be – but there are principles behind those lines. And the principle behind those lines is that we don't want courts having – adjudicating the policy disagreements or the disagreements about how to interpret the statute. Let me ask it this way, counsel. You and the plaintiffs have cited all kinds of different cases dealing with this question of standing. How many of those cases deal with the fundamental claim here, which is this regulation is illegal? It's contrary to the statute, and therefore the regulation can't be permitted to stand. Illegality strikes me as, if we're going to open that door, not one that is going to lead to the metaphor of the floodgates and we're going to be flooded with litigation. As a matter of fact, I don't claim to be an exponent of all this, but I don't think any or certainly not many of these other cases dealt with an illegal claim as this one does. There is no case that is absolutely on all fours, or this would be a very easy case. But I would point you to this Court's decision in Barber v. City of Springfield. In Barber v. City of Springfield, the plaintiffs said, look, the city has created this special business district, and it did so by making fraudulent findings. It's empowered to create this business district by state statute, and in order to do so, it has to make certain findings a fact. And those findings were fraudulent. And so we would like to challenge the creation of this business district. And this Court said, no, the taxpayer can't do that. The analysis included a discussion of an unwillingness by this Court to really speculate about what the ultimate economic effects on the city's general revenue would be. But in that case, the fact that what was being challenged, that the complaint was illegality, was not alone enough to create taxpayer standing. I may be misinterpreting the thrust of Mr. Hubert's primary argument, but it's that this isn't a suit for the collection of taxes. It's a suit to basically prevent the implementation of an illegal regulation. It just so happens that the coincident result is it would require additional taxes to be paid. It would seem that in any sort of effort to seek the collection of taxes, there would be some preliminary step necessary to achieve that result, and that could be the aim of a lawsuit. In Morris v. Chambliss, the complaint alleged that the Board of County Commissioners was without authority to authorize the acceptance of a certain sum of money, that the county clerk was without authority to certify any amount less than the amount that was due, that the sheriff and the ex-officio collector was without authority to accept a lesser sum. But in essence, this was a suit to collect taxes. At least that's how the Supreme Court interpreted it and said so in its holding, that there is no right in an individual taxpayer to bring a suit to the collection of taxes. So is it required of the court to discern the ultimate intent behind a lawsuit to make the determination? Is this in fact a suit to collect taxes, even though it may be superficially a suit to do something different? Yeah, I think that goes to the question of whether or not the taxpayer plaintiff has an equitable interest in the money at issue. And this is why Lyons and Schicchetti are actually relevant, even though of course they are taxpayer derivative suits. What those cases say, and what's consistent with the Chambliss case, is that until the money is in the hands of the government and actually in the Treasury, the taxpayers do not have an equitable interest in it. The only entity that has an equitable interest in it is the government entity itself. Following up on that, what if the door were open to taxpayer suits on a limited basis, as I discussed earlier, where just say if there is a claim that the regulation is in violation of the statute, that the regulation exceeds what the administrative agency may do, that we will let that be litigated. And in doing so, imagine like this very case, if that were the sole issue, so we have a declaratory judgment or some other kind of action brought, we're not talking about opening it up as to, for instance, the city of Springfield case, what were the fact findings and whether that was legitimate or not. Instead we're asking a trial judge, the first instance possibly this court later on, to do what we do all the time and ought to be able to do expeditiously, construe a statute and construe regulations and see whether they work. Again, viewing this case narrowly, that seems to be what the plaintiffs are asking here. And I'm not sure why it would be inappropriate to say, yeah, they are standing to challenge as illegal a regulation. Let's get that litigated, easy enough to do. And why would there be floodgates thrown asunder and aside if that were the limited holding? Well, I don't think that holding is particularly limited at all. It opens the door for taxpayers to start to root through the Illinois Administrative Code. I'm sorry, with the train going here, because I want to hear what you said that I wasn't able to hear. Is now okay? Yes. It invites taxpayers to root through the Illinois Administrative Code and look for things that they think are inconsistent with the statutes. And these allegations of illegality are often questions of interpretation. They're not necessarily straightforward. One thing is clearly inconsistent with the other or clearly prohibited by the other. But two quick questions about what you just said. One, I'm not so sure it's a bad thing to have the Administrative Code look through and see where this might occur. And two, you're right, it might be a question of interpretation, but the incentive to bring litigation where you're just talking about interpretation I think would be reduced, and maybe there would be a real public benefit if it's not interpretation. Because here, frankly, it looks like they're just wrong, that this exceeds their scope. And three, it's quick and easy. If the only question is a matter of legal interpretation, this is not something that should drag through the courts or cause disruption. You just have a judge, hey, here's the statute, here's the regulation. Regulation is inconsistent. Let's throw it out. Well, I'm not sure it's always going to be so quick and easy, because some regulations are premised on certain types of determinations made by an agency, for example. So these may not be as straightforward. Some may be straightforward, but many may not be. In addition, what we are often getting down to are disagreements, really the kind of generalized disagreement that standing doesn't provide for, disagreements about policy, about how are we going to implement this particular statute. Some people might say you can't do it this way, the statute doesn't allow for it, but that is the kind of policy determination that doesn't belong in the courts. All right. Thank you, Ms. Shapiro. We would ask you to affirm the secret court. All right. Thank you. Mr. Huber, rebuttal. Thank you. I'd first like to address the prospect that's been raised of taxpayers combing through the administrative code to find illegal things to challenge. And it's important to consider what the alternative to that is, which is that there are lots of illegal provisions and regulations that simply aren't challenged. And perhaps that's the worst outcome, if there's lots of illegal regulations on the book, that few, if any, people could do anything about. And, of course, the Attorney General could always perhaps go and challenge illegal regulations, but the Attorney General's resources are limited, and the whole point of taxpayer standing is so that things can get challenged that otherwise wouldn't. And that also gets to the argument the Department raises about alternative means that taxpayers could pursue, such as lobbying their legislators. But, of course, organizing taxpayers to effectively lobby their legislators is very costly and very difficult. Well, certainly not in a legislature as functional as the Illinois General Assembly. Well, in any legislature, no matter how well-functioning or poor-functioning it is, it's difficult for taxpayers to organize to effectively lobby because, in general, the impact of any given illegal thing on any given taxpayer is very small. So to organize them to actually challenge any given thing is difficult. And that's precisely why we need taxpayer standing in general, because you can't expect the legislature, even full of legislators with the best of intentions, to address every problem that's in every statute and regulation, simply because of the nature of lobbying and the nature of the legislative process. It's going to be very costly and difficult to get that done. Would we be confirming Ms. Shapiro's worst fears with the Liberty Justice Center, whoever that is, combing through the administrative code, looking for other things to challenge on the grounds that it's illegal? If there are things that are illegal, perhaps. But, you know, our resources are pretty limited. We can only bring so many lawsuits at a time, and I don't think there's too many other people like us. So the prospect of a flood of litigation just simply isn't realistic. Even if they are full of illegal regulations, and, again, if they are full of illegal regulations, what's so wrong with challenging them? What about her point? It seems to me a pretty good one, that some of this stuff may not be as cut and dried as you argue this current regulation is. It might call for nuances or interpretation or the like. What about that? Would they be flooded with litigation challenging something as illegal when it really is a question of construction, perhaps? Well, again, there's a natural constraint on all of this because people's resources to bring lawsuits are limited. But besides that, you also have that issue, of course, with respect to the constitutionality of statutes. People can dream up all kinds of ambiguities in statutes and in constitutional law to think of ways that a statute might be invalid. But we don't find ourselves faced with courts flooded by those kinds of lawsuits, and there's no reason to think that you'd find it any more flooded with respect to regulatory provisions. And regarding the point about challenging settlements of tax debts, say, I don't know the law on this point precisely, but I would imagine that the government actually has the legal authority to settle tax debts. And so even if you did have taxpayers standing to challenge that, which presumably you wouldn't because it would be something that already occurred, but even if you did, the first time it came up, the courts would say, well, no, the department or whatever official is involved here actually has some discretion in this area, and so that's not illegal, and that puts an end to the matter the first time it comes up. If taxpayers would even have standing, which they wouldn't because this is presumably already, presumably wouldn't because presumably this has already occurred. If the court has any other questions, I'd be happy to answer them. I don't see any. Thank you. Thank you. Thank you both. Counsel, the case will be taken under advisement and a written decision shall issue.